**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| RONALDO VELASQUEZ BARTOLON, | : | Case No. 1:25-cv-747 |
| | : | |
| Petitioner, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| PAM BONDI, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. 1) and Petitioner's Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Emergency Relief (Doc. 15). The Court held a telephonic conference on December 1, 2025, as to the Motion for Temporary Restraining Order. *See* S.D. Ohio Civ. R. 65.1(a). Respondent Kevin Grathwohl, Butler County Jail Warden, had previously filed a Motion to Dismiss for Failure to State a Claim (Doc. 6), to which Petitioner filed a Response in Opposition (Doc. 8). Federal Respondents filed a combined Return of Writ and Response in Opposition to the Motion for Temporary Restraining Order (Doc. 16), to which Petitioner filed a Reply in Support (Doc. 17) and Supplemental Evidence (Doc. 18). This matter is therefore ripe for the Court's review.

For the reasons explained below, Petitioner's Petition (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**, Respondent Kevin Grathwohl's Motion to Dismiss for Failure to State a Claim (Doc. 6) is **DENIED AS MOOT**, and Petitioner's Motion for Temporary

Restraining Order (Doc. 15) is **DENIED AS MOOT**.

## FACTS AS ALLEGED

Petitioner Ronaldo Velasquez Bartolon is a 21-year-old Guatemalan citizen who entered the United States in February 2022, when he was 17 years old. (Petition, Doc. 1, ¶ 2.) At that time, Petitioner was apprehended by immigration officials and classified as an Unaccompanied Alien Child ("UAC"). (*Id.*) He was then released to family members in Ohio. (*Id.*) In September 2022, Petitioner applied for Special Immigration Juvenile Status ("SIJ Status") with United States Citizenship and Immigration Services ("USCIS"), and his application was approved in March 2023. (*Id.* at ¶¶ 5–6.)

On June 19, 2025, the Municipal Court for Fairfield, Ohio sentenced Petitioner to 180 days in jail, with 90 days suspended, for the first-degree misdemeanor offense of driving a motor vehicle without a license. (Petition, Doc. 1, ¶ 8.) Petitioner's sentence was deemed completed early after he served 40 days in a Hamilton, Ohio jail. (*Id.* at ¶¶ 8–10.) However, because United States Immigration and Customs Enforcement ("ICE") had placed a detainer on Petitioner, he was thereafter transferred to the Butler County Jail in Ohio and placed in ICE custody. (*Id.* at ¶ 10.) Petitioner remains in ICE custody, and no removal proceedings were scheduled at the time Petitioner initiated this habeas proceeding. (*Id.* at ¶ 12.) Since then, on October 30, 2025, it appears that Petitioner was served with a Notice to Appear in connection with his removal proceedings. (*See* Notice to Appear, Doc. 16-1, Pg. ID 162–65.)

Petitioner filed a bond request prior to the Department of Homeland Security's commencement of removal proceedings. (Petition, Doc. 1, ¶ 13.) The immigration judge

denied Petitioner's request after concluding that the immigration court lacked authority to determine bond. (*Id.* at ¶ 14; *see also* Bond Order, Doc. 16-2, Pg. ID 166–67.) There is no indication on the record here that Petitioner has appealed this decision to the Board of Immigration Appeals ("BIA").

On December 9, 2025, Petitioner appeared before an immigration judge for a bond redetermination hearing. (Reply, Doc. 17, Pg. ID 188–89; Supplemental Evidence, Doc. 18.) The immigration judge again denied Petitioner bond on jurisdictional grounds, finding that *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), remains in effect and therefore bars the immigration court from exercising jurisdiction to determine Petitioner's bond. (Second Bond Order, Doc. 18, Pg. ID 195–97.) The immigration judge also determined that the orders concerning summary judgment and class certification by the United States District Court for the Central District of California in *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), did not alter this conclusion. (*Id.*) It appears that Petitioner has reserved his right to appeal this decision within the immigration court system. (*Id.* at Pg. ID 197.)

## PROCEDURAL POSTURE

On October 15, 2025, Petitioner filed a Verified Petition for Writ of Habeas Corpus (Doc. 1). Specifically, Petitioner claims that his ongoing detention violates his right to due process under the Fifth Amendment, and that his removal from the United States prior to adjudication of his lawful permanent residency status violates his right to procedural due process under the Constitution. (*Id.* at ¶¶ 66–78.) Petitioner further alleges that Respondents violated the Administrative Procedure Act by revoking his release and

3

detaining him without a bond hearing. (*Id.* at ¶¶ 79–86.) Finally, Petitioner alleges that his removal without an opportunity for judicial review violates the Suspension Clause. (*Id.* at ¶¶ 87–88.) Respondent Kevin Grathwohl filed a Motion to Dismiss for Failure to State a Claim (Doc. 6) on October 29, 2025, to which Petitioner filed a Response in Opposition (Doc. 8) on November 10, 2025.

On November 25, 2025, Petitioner filed an Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Emergency Relief requesting that this Court order Respondents to release Petitioner from custody and enjoin Respondents from transferring Petitioner outside the Southern District of Ohio pending these proceedings. (Motion, Doc. 15, Pg. ID 122–23.) After correspondence with counsel for both Petitioner and Respondents, the Court set this matter for a preliminary conference on December 1, 2025. (12/01/2025 Notice; *see* S.D. Ohio Civ. R. 65.1(a).) Counsel for both Petitioner and Respondents were present by phone. (12/01/2025 Minute Entry.) On December 5, 2025, Federal Respondents filed a combined Return of Writ and Response in Opposition to the Motion for Temporary Restraining Order (Doc. 16), to which Petitioner filed a Reply in Support (Doc. 17) on December 8, 2025. Petitioner also filed Supplemental Evidence (Doc. 18) on December 10, 2025, which indicated that Petitioner received a bond redetermination hearing on December 9, 2025, but that the immigration judge denied bond on jurisdictional grounds.

## LAW & ANALYSIS

### I.    Subject Matter Jurisdiction

The fundamental question of subject matter jurisdiction must precede any analysis of the merits on this matter. As federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute," they "have an independent obligation to determine whether subject-matter jurisdiction exists." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Petitioner asserts that this Court possesses jurisdiction to hear this matter because it involves: (1) habeas review (28 U.S.C. § 2241), federal question jurisdiction (28 U.S.C. § 1331), and the Suspension Clause (U.S. Const. art. I, § 9, cl. 2); (2) the All Writs Act (28 U.S.C. § 1651); (3) the Administrative Procedure Act (5 U.S.C. § 701); and (4) injunctive relief pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201). (Petition, Doc. 1, ¶ 24.) Respondents, in turn, contend that several statutory provisions divest this Court of jurisdiction over Petitioner's claims. (*See* Return of Writ, Doc. 16, Pg. ID 129–35.)

To begin, in enacting 8 U.S.C. § 1252(g) through the REAL ID Act, Congress limited the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "In the REAL ID Act, Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id.* Similarly, given § 1252(g)'s language as to commencing proceedings and adjudicating cases, this jurisdictional bar also extends to situations in which a petitioner is notified that he or she must "voluntarily depart or face deportation." *Ene v. Phillips*, 99 F. App'x 642, 643 (6th Cir. 2004).

The plain language of 8 U.S.C. § 1252(g) therefore limits jurisdiction as it relates to claims arising from the commencement of removal proceedings, adjudication of such cases, or the execution of removal orders—even when jurisdiction would otherwise be proper under federal question jurisdiction, mandamus jurisdiction, or "any other provision of law." *See Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010); *see also Karki, et al. v. Jones, et al.*, No. 25-CV-281, 2025 WL 1638070, at *7 (S.D. Ohio June 9, 2025). By its terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which would typically provide jurisdiction over cases where an alien is held in custody in violation of the Constitution or the laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). That said, certain applications of § 1252(g) may potentially cause tension with the Suspension Clause. As the Framers enshrined in the Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In order to successfully contest the constitutionality of this statute on Suspension Clause grounds,

6

two things must be true: (1) the petitioner must be seeking "core" habeas relief; and (2) there is no adequate substitute to effectively test petitioner's detention. *Hamama v. Adducci*, 912 F.3d 869, 875–76 (6th Cir. 2018).

Petitioner, however, contends that 8 U.S.C. § 1252(g) does not strip this Court of jurisdiction, as the statute reaches only "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." (Petition, Doc. 1, ¶ 25, *see also* n.17 (quoting *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)) (cleaned up).) Further, Petitioner argues that if § 1252(g) "did strip jurisdiction from this case, that statute would be unconstitutional as applied," pursuant to the Suspension Clause. (*Id.* at n. 18.)

In approaching this jurisdictional question, the Court splits Petitioner's claims into two categories: removal-based claims (Counts 2 and 4) and detention-based claims (Counts 1 and 3). At bottom, Counts 2 and 4 seek to challenge the attempt to remove Petitioner, arguing that such removal is erroneous given his SIJ Status, and that the removal would violate the Suspension Clause. (Petition, Doc. 1, ¶¶ 24, 73–78, 87–88.) His detention-based claims, however, challenge his detention without a bond hearing in violation of his Fifth Amendment rights and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The Court begins with Petitioner's removal-based claims and then turns to his detention-based claims.

### a. Removal-Based Claims

To the extent Petitioner seeks this Court to enjoin removal proceedings or his ultimate removal (Petition, Doc. 1, Pg. ID 27), the Court finds that it lacks subject matter

jurisdiction over these claims. In reaching this conclusion, the Court is guided by the seminal precedent on this issue: *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018). In *Hamama*, the Sixth Circuit found that "the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." 912 F.3d at 874. The Sixth Circuit proceeded to explain why the district court's "broad, novel, and incorrect application of the Suspension Clause" was misguided for "at least two" independent reasons. *Id.* at 875.

First, the Sixth Circuit found that the petitioners in *Hamama* were not seeking a "core remedy" of habeas relief through their removal-based claims; thus, such relief was not protected by the Suspension Clause. *Hamama*, 912 F.3d at 875–76. "The traditional remedy provided by habeas is removing the injury of unjust and illegal confinement." *Id.* at 875 (quotation omitted). As the petitioners neither sought—nor were granted—release from custody, the Sixth Circuit concluded that habeas relief was not implicated. *Id.* Specifically, "'the nature of the relief sought by the habeas petitioners suggest[ed] that habeas is not appropriate in these cases' because 'the last thing petitioners want is simple release' but instead a 'court order requiring the United States to shelter them.'" *Id.* (quoting *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008)).

Second, the Sixth Circuit explained that "[e]ven if the relief Petitioners seek was available under the common-law writ, Petitioners' Suspension Clause claim would fail for the independent reason that Congress has provided an adequate alternative as applied to them." *Hamama*, 912 F.3d at 876. This is significant because "Congress does not suspend the writ when it strips the courts of habeas jurisdiction so long as it provides a

8

substitute that is adequate and effective to test the legality of a person's detention." *Id.* (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). The Sixth Circuit found that the alternative method of review—filing a motion to reopen with the ability to appeal the decision to the federal appellate court—proved adequate. *Id.* at 876–77. Though the petitioners argued that this alternative would be inadequate as applied to them, the Court disagreed since they had years to file their motions to reopen and the ability to pursue stays of removal while seeking relief. *Id.*

Courts throughout the Sixth Circuit have faithfully applied *Hamama* as a bar to judicial review of the execution of removal orders. For instance, the District Court for the Eastern District of Michigan has frequently denied similar requests to stay removal orders in light of *Hamama*'s controlling precedent. *See, e.g., Al Shimary v. Rayborn*, No. 2:24-CV-11646, 2024 WL 3625169, at *2 (E.D. Mich. July 31, 2024); *Kazan v. Sessions*, No. 18-CV-11750, 2023 WL 2347069, at *2–3 (E.D. Mich. Mar. 3, 2023); *Portillo v. Wolf*, No. 2:20-CV-12730, 2020 WL 6130880, at *2 (E.D. Mich. Oct. 19, 2020); *El Moustrah v. Barr*, No. 19-CV-13549, 2020 WL 1473305, at *2 (E.D. Mich. Mar. 25, 2020). More recently, this Court has found the same. *See, e.g., Karki, et al. v. Jones, et al.*, No. 1:25-CV-281, 2025 WL 1638070, at *7 (S.D. Ohio June 9, 2025); *Abdugoniev v. Bondi, et al.*, No. 1:25-CV-133, 2025 WL 2772934 (S.D. Ohio Sept. 26, 2025). Not to mention, the Sixth Circuit has reaffirmed its reliance on *Hamama*. *See, e.g., Karki v. Jones*, No. 25-3440, 2025 U.S. App. LEXIS 20660, *6–10 (6th Cir. Aug. 13, 2025); *Rranxburgaj v. Wolf*, 825 F. App'x 278, 282 (6th Cir. 2020).

Applying *Hamama* here, the Court finds that Petitioner's removal-based claims arise squarely under the Attorney General's power to "commence proceedings,

adjudicate cases, [and] execute removal orders" and are thus not subject to judicial review by this Court. 8 U.S.C. § 1252(g). Like in *Hamama*, Counts 2 and 4 do not seek simple release from unlawful detention but instead ask the Court to enjoin Petitioner's removal and to essentially "shelter" him—requests which fall outside the scope of core habeas relief. 912 F.3d at 875; *see also Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033, at *5 (W.D. Mich. Oct. 28, 2025) (finding that the Suspension Clause does not apply and that § 1252(g) precludes jurisdiction over removal-based claims). The Court would note that Petitioner's Reply does not provide argument as to how his removal-based claims fall beyond the ambit of § 1252(g). (*See* Reply, Doc. 17, Pg. ID 182.) And, even assuming these claims were available under the common-law writ, Petitioner's Suspension Clause argument fails because Petitioner has an adequate alternative method of review for these removal-based claims. Namely, Petitioner can appeal any removal order he receives to the BIA. *See Karki*, 2025 WL 1638070, at *7–8 (discussing potential avenues of relief). Thus, the Court lacks subject matter jurisdiction over Counts 2 and 4 of the Petition; for this reason, these counts must be dismissed.

### b. Detention-Based Claims

Turning to Counts 1 and 3, the Court finds that these claims sound in core habeas relief and do not fall within the scope of § 1252(g). In *Hamama*, the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." *Hamama*, 912 F.3d at 877; *see also Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Zadvydas v. Davis*, 533 U.S. 678 (2001). Indeed, "[f]or over 100 years, habeas corpus has been recognized as the vehicle through which

noncitizens may challenge the fact of their detention." *Malam v. Adducci*, 452 F. Supp.3d

643, 649 (E.D. Mich. 2020) (citing *Chin Yow v. U.S.*, 208 U.S. 8, 13 (1908)). Here, Petitioner

argues that his detention without a bond hearing is unlawful; in other words, he

challenges the fact of his detention, independent from his removal. Accordingly, § 1252(g)

does not inhibit this Court from reviewing such detention-based claims. *See, e.g., Zhen v.*

*Doe*, No. 3:25-CV-1507, 2025 WL 2258586, at *2–4 (N.D. Ohio Aug. 7, 2025); *Resendiz v.*

*Noem*, No. 4:25-CV-159, 2025 WL 3527284, at *2 (W.D. Ky. Dec. 9, 2025).

Respondents cite a few other statutory provisions to make the argument that the

Court lacks jurisdiction over the detention-based claims. (Return of Writ, Doc. 16, Pg. ID

129–30, 132–35.) The Court takes each remaining argument in turn. First, 8 U.S.C. §

1252(e)(3)—entitled as "Challenges on Validity of the System"—provides:

> Judicial review of determinations under section 1225(b) of this title and its
> implementation is available in an action instituted in the United States District
> Court for the District of Columbia, but shall be limited to determinations of—
>
> (i)     whether such section, or any regulation issued to implement
> such section, is constitutional; or
>
> (ii)    whether such a regulation, or a written policy directive,
> written policy guideline, or written procedure issued by or under the
> authority of the Attorney General to implement such section, is not
> consistent with applicable provisions of this subchapter or is
> otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A). Rather than "challenging the validity of the statutory scheme

itself" or a written policy, Petitioner is challenging "the lawfulness of his detention

without a bond hearing" because—as Petitioner sees it—the mandatory detention statute

simply does not apply to him. *Rivero v. Noem, et al.*, No. 1:25-CV-1294, 2025 WL 3438303,

at *2 (W.D. Mich. Dec. 1, 2025). Thus, § 1252(e)(3) does not preclude jurisdiction. *See, e.g.,* *id.*; *Ardon-Quiroz v. Assistant Field Director*, No. 25-CV-25290, 2025 WL 3451645, at *3 (S.D. Fla. Dec. 1, 2025) (collecting cases for proposition that § 1252(e)(3) does not deprive federal courts of jurisdiction in such situations).

Respondents' invocation of 8 U.S.C. § 1252(b)(9) is also unavailing as applied to Petitioner's detention-based claims. Under this provision, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" is exclusively funneled to the Courts of Appeals. 8 U.S.C. § 1252(b)(9), (a)(5). In *Jennings v. Rodriguez*, the Supreme Court rejected an "expansive interpretation of § 1252(b)(9)" and determined that "questions of law" as to whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the decision to remove an alien. 583 U.S. 281, 292–94 (2018). Here, since Petitioner's detention-based claims squarely contest his detention under 8 U.S.C. § 1225 and whether he is entitled to a bond hearing, § 1252(b)(9) is no bar to this Court's jurisdiction. *See, e.g., Ramirez v. Lewis, et al.*, No. 4:25-CV-143, 2025 WL 3553676, at *2 (W.D. Ky. Dec. 11, 2025) (citing *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)); *Guerra v. Noem*, No. 1:25-CV-1341, 2025 WL 3204289, at *4 (W.D. Mich. Nov. 17, 2025); *Alonso v. Tindall*, No. 3:25-CV-652, 2025 WL 3083920, at *2 n.5 (W.D. Ky. Nov. 4, 2025).

Thus, for all these reasons, Respondents' jurisdictional arguments concerning Petitioner's detention-based claims do not persuade. *See Coronado v. Sec'y, Dep't of Homeland Sec., et al.*, No. 1:25-CV-831, 2025 WL 3628229, at *3–6 (S.D. Ohio Dec. 15, 2025)

(similarly walking through why §§ 1252(g), 1252(b)(9), and 1252(e)(3) do not divest jurisdiction as to analogous claims).

Still, one final excursion is in order before the Court can entertain the merits of Petitioner's detention-based claims. The dictates of Article III provide that—even if justiciability exists at the time the case commences—federal courts may only adjudicate "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317 (1988). Consequently, a case becomes moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cnty. v. Davis,* 440 U.S. 625, 631 (1978) (quotation omitted). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Hanrahan v. Mohr,* 905 F.3d 947, 960 (6th Cir. 2018) (cleaned up).

Respondents argue that this matter is moot because Petitioner received a bond redetermination hearing on December 9, 2025. (Return of Writ, Doc. 16, Pg. ID 129.) Petitioner specifically requests an order for "the immigration judge to enter a decision regarding [his] custodial redetermination request *on the merits* of the case and not on jurisdictional grounds." (Petition, Doc. 1, Pg. ID 27 (emphasis added); *see also* Reply, Doc. 17, Pg. ID 188.) The immigration judge determined, again, that the court did not have jurisdiction over the bond proceedings pursuant to *Matter of Yajure Hurtado.* (Second Bond Order, Doc. 18, Pg. ID 195–97.) Although the immigration judge stated, "if it were to be [alternatively] found that this Court has jurisdiction to redetermine bond, the Court would grant bond in the amount of $35,000," this alternative ruling was not given effect due to the primary holding that the court lacked jurisdiction. (*Id.*)

13

Accordingly, Counts 1 and 3 shall proceed, and the Court will now address the substance of these detention-based claims.

## II.    Merits of Counts 1 and 3

28 U.S.C. § 2243 requires a court to issue a writ or order the respondent to show cause as to why a writ should not issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. The statute also "requires an initial screening of a petition" in which "a court accepts as true the allegations in the petition and construes them in favor of the petitioner." *Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-2107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025) (citing *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011)). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," then the court must dismiss the petition. Rule 4, Rules Governing Section 2254 Cases (applicable to petitions arising under § 2241).

### a.  Exhaustion

The Court turns to the preliminary question of exhaustion. The well-established doctrine of exhaustion of administrative remedies instructs that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quotation omitted). Exhaustion serves several commendable goals: promoting judicial efficiency, allowing agencies to weigh in on the question as designed through the statutory or regulatory regime, providing an opportunity for self-correction, and producing a useful

14

record. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Wheeler v. Williams*, No. 20-4037, 2021 WL 6071501, at *2 (6th Cir. Dec. 20, 2021). Specifically, exhaustion often takes one of three forms: statutory exhaustion, regulation-based exhaustion, or—as in "most contexts"—prudential exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994). While statutory exhaustion may be understood as a mandate because the need to exhaust is explicitly spelled out by statute, "sound judicial discretion" otherwise governs when courts decide whether to apply prudential exhaustion. *Shearson*, 725 F.3d at 593 (quotation omitted); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "[C]ongressional intent and any applicable statutory scheme" inform judicial discretion on this point. *Id.* at 593–94 (quotation omitted).

No relevant statute commands administrative exhaustion within this context, so the Court's inquiry focuses upon prudential exhaustion. *See Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 25-CV-13128, 2025 WL 3089756, at *3 (E.D. Mich. Nov. 5, 2025). As sister district courts have widely recognized while recently wrestling with cases like this one, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). And, while the Sixth Circuit "has not formally adopted a standard for determining when prudential exhaustion applies" in such situations, the Ninth Circuit has promulgated a relevant test. *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Under this test, exhaustion may be required when "(1) agency expertise makes agency consideration

15

necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If prudential exhaustion is appropriate under this test and a petitioner does not exhaust all administrative remedies, a district court should generally either dismiss the petition without prejudice or stay the proceedings until the petitioner exhausts all remedies. *Espinosa*, 2025 WL 2878173, at *2 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

The Sixth Circuit has cited to the Ninth Circuit's approach in the context of challenging bond determinations by immigration courts, albeit in a brief, unpublished order. *See Rabi v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160). Additionally, several other district courts throughout the Sixth Circuit have addressed this issue by applying the Ninth Circuit's test. *See, e.g., Mendoza v. Raycraft*, No. 4:25-CV-2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-CV-1621, 2025 WL 2444114, at *8–9 (N.D. Ohio Aug. 25, 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Espinoza*, 2025 WL 2878173, at *2; *Lopez-Campos*, 2025 WL 2496379, at *4; *Orellana v. Noem*, No. 4:25-CV-112, 2025 WL 3006763, at *2 (W.D. Ky. Oct. 27, 2025).

Finding this framework persuasive under the circumstances, the Court will apply the Ninth Circuit's test for prudential exhaustion. As the Court adjudicates these cases

16

and controversies, it is mindful of the separation of powers doctrine at play. *See City of New York v. Slater*, 145 F.3d 568, 570 (2d Cir. 1998) (per curiam) ("In general, a party is required to exhaust its administrative remedies before seeking judicial review of an agency decision, 'in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial resources.'" (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996))). Respondents walk through each factor within their briefing, while Petitioner does not offer any argument in opposition to the application of the specific factors. (*See* Return of Writ, Doc. 16, Pg. ID 135–37; Reply, Doc. 17, Pg. ID 183–84.) For the reasons set forth below, the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies.

Beginning with the first *Puga* factor, the Court finds that the BIA's expertise makes agency consideration beneficial to generate a proper record and reach a proper decision. While an agency's interpretation of a statute "cannot bind a court," agency expertise "has always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quotation omitted) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 98 n.8 (1983); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). As discussed above, Petitioner challenges his detention and removal before this Court, and the record is devoid of any appeal filed through the immigration system. "[A]ny determination regarding detention here turns on interpretation and application of the governing removal regime." *Villalta*, 794 F. Supp. 3d at 531. "In the first

17

instance, such review should proceed before the Board of Immigration Appeals to apply its experience and expertise without judicial interference." *Id.* (quotation omitted). A "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." *Rojas-Garcia v. Ashcroft,* 339 F.3d 814, 819 (9th Cir. 2003).

The second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza,* 2025 WL 3157796, at *10. Petitioner's apparent attempt to sidestep the BIA appeals process in favor of habeas review highlights the need for an exhaustion requirement here to protect agency authority, limit interference with agency affairs, and promote judicial efficiency. *Beharry v. Ashcroft,* 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003).

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring exhaustion, as administrative review of the bond denials here would allow the agency to correct its own alleged mistakes and alleviate the need for judicial review. Petitioner does not contest that the BIA could provide the same relief it seeks before this Court. "Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the BIA's authority by allowing it the opportunity to correct its own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review." *Mendoza,* 2025 WL 3157796, at *10.

Although the *Puga* factors weigh in favor of requiring exhaustion, a court may nevertheless waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). In his Reply, Petitioner argues that even if he appealed to the BIA and won, it would be a largely pyrrhic victory as the process can take over a year and he would remain detained until then. (Reply, Doc. 17, Pg. ID 183–84.) But, the Court finds this argument unpersuasive. At this point, it is "speculative to make any assumptions regarding when the BIA will resolve" a potential bond appeal by Petitioner, as "[t]here is insufficient information before the Court at this time to demonstrate that exhaustion of Petitioner['s] administrative remedies will be unduly prolonged." *Mendoza*, 2025 WL 3157796, at *13. Further, even if the BIA appeals process were to create additional delay, the Court has insufficient evidence before it to conclude that "the risk of irreparable harm to Petitioner[] outweighs the importance of requiring exhaustion under the circumstances presented." *Id.*

Petitioner's apparent failure to timely file a notice of appeal with the BIA regarding his first bond denial is also insufficient to deem exhaustion futile, as "exhaustion may not be achieved through a litigant's procedural default of his or her available remedies." *Laing*, 370 F.3d at 998. Moreover, waiver is inappropriate here because, if the exhaustion requirement were waived in every case where a party failed to timely file for an administrative appeal, then "any party could obtain judicial review of initial agency actions simply by waiting for the administrative appeal period to run and then filing an

19

action in district court." *Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1394 (9th Cir. 1993). Importantly, though, Petitioner has now received a second bond determination. (*See* Second Bond Order, Doc. 18, Pg. ID 195–97.) And, notably, Petitioner reserved his right to appeal that determination. (*Id.* at Pg. ID 197.) Thus, requiring Petitioner to exhaust his administrative remedies by appealing his second bond determination is not futile, as he is well within the time to lodge that appeal in the BIA.

Petitioner further argues that exhaustion would be futile given the BIA's decision in *Matter of Hurtado*. (Motion, Doc. 15, Pg. ID 116 n.6; Reply, Doc. 17, Pg. ID 183–84.) Such futility must be "clear and positive," as a petitioner "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) (quotation omitted). The Court would note that a flurry of litigation has ensued since *Matter of Hurtado*, including—as the immigration judge observed in the bond redetermination hearing—a class action ruling in *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). (Second Bond Order, Doc. 18, Pg. ID 195-97.) And, "even where there is a high probability of denial of a petitioner's appeal of an Immigration Judge's bond decision, such a probability does not weigh in favor of waiving exhaustion." *Espinoza*, 2025 WL 2878173, at *3 (quotation omitted); *see also Beharry*, 329 F.3d at 62 (explaining that merely because an "argument would likely have failed is not tantamount to stating that it would have been futile to raise it").

Moreover, Petitioner expresses concern as to the delay that would result from requiring administrative exhaustion. (Motion, Doc. 15, Pg. ID 116 n.6; Reply, Doc. 17, Pg.

ID 183–84.) Courts have discretion to waive the exhaustion requirement and rule on a matter when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). While some courts in this circuit have chosen to waive exhaustion because of the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion. *See Alvarez-Lopez v. U.S. Dep't of Homeland Security*, No. 25-CV-13098, 2025 WL 3525956, at \*2 (E.D. Mich. Dec. 9, 2025) (surveying intra-circuit split on the issue). And, the Court notes that, in many of those cases, the district courts supported their decision to waive exhaustion with both a finding of futility and undue hardship, not just the latter. By comparison, the Court finds here that Petitioner has not made a showing of futility. Absent binding precedent to the contrary, this Court therefore declines to find that the risk of delay alone warrants a waiver of exhaustion.

### b. Applicability of *Bautista v. Santacruz*

One final matter remains. Petitioner contends that he is entitled to a bond hearing because he is purportedly a member of the class certified in *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). (Reply, Doc. 17, Pg. ID 184–85 n.16.) Specifically, the United States District Court for the Central District of California entered declaratory relief to the following class: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista*, 2025 WL

21

3288403, at *9. Petitioner, however, does not provide argument as to why *Bautista* applies

here.

As an initial matter, no final judgment has been issued in the *Bautista* litigation at

this juncture. *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3289861, at *11 (C.D. Cal.

Nov. 20, 2025) (granting partial motion for summary judgment but denying request to

enter final judgment); *see also Avalos v. Hardin*, No. 2:25-CV-1008, 2025 WL 3537566, at *2

n.2 (M.D. Fla. Dec. 10, 2025) (emphasizing non-final nature of the *Bautista* order). Several

district courts have also expressed that "it is unclear what specific relief the [*Bautista*]

court has afforded to the petitioner or to the class members." *Shi v. Lyons, et al.*, No. 1:25-

CV-274, 2025 WL 3637288, at n.5 (S.D. Tex. Dec. 12, 2025); *see also Cahuec v. Soto, et al.*, No.

25-CV-17389, 2025 WL 3524463, at *2 (D.N.J. Dec. 9, 2025) (characterizing "the current

status of the *Bautista* action [as] unclear"); *Melgar v. Bondi, et al.*, No. 8:25-CV-555, 2025

WL 3496721, at *15 (D. Neb. Dec. 5, 2025) ("There is as yet no order in *Bautista* granting

any injunctive relief to class members.").

And, perhaps even more fundamentally, "[i]f another federal district court in

another district has ordered a party (e.g., ICE) to do something, and the party is failing to

follow that order, the relief for that failure primarily lies before the court that entered the

order in the first instance." *Coronado v. Sec'y, Dep't of Homeland Sec., et al.*, No. 1:25-CV-

831, 2025 WL 3628229, at *13 (S.D. Ohio Dec. 15, 2025) (concluding that the petitioner

"cannot simply ask this Court to enforce that court's order"); *see also Ramirez v. Lewis, et

al.*, No. 4:25-CV-143, 2025 WL 3553676, at *4 n.6 (W.D. Ky. Dec. 11, 2025) (finding that

*Bautista* "does not dictate the Court's opinion"). Accordingly, *Bautista* does not alter the Court's preceding analysis.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over Petitioner's removal-based claims and, after consideration, declines to review Petitioner's detention-based claims due to failure to exhaust. Accordingly, the Court **ORDERS** the following:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**;

2) Respondent Kevin Grathwohl's Motion to Dismiss for Failure to State a Claim (Doc. 6) is **DENIED AS MOOT**;

3) Petitioner's Motion for Temporary Restraining Order (Doc. 15) is **DENIED AS MOOT**; and

4) This matter is **TERMINATED** from the Court's docket.

   **IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND